Today is 13-2075, United States v. Christopher Mullins. Mr. Smith. Good morning, Your Honor, and Happy New Year. May it please the Court, my name is William Smith. I represent Mr. Mullins in this matter. I would like to start off by the government in its brief went on at some length in various points in the brief about arguing a sort of conceptualizing my argument, our argument, as being that I'm suggesting that the quantity of the alleged cocaine had to have been proved. I'm making no such suggestion at all. In other words, that is to say, I'm not suggesting they would have had to have brought in a certificate of analysis or a live testimony with respect to that issue. But what I am suggesting is the conspiracy as outlined in the indictment in this case made it very clear that the conspiracy for which Mr. Mullins was being charged was, I would call it the Ohio Street conspiracy, which the amounts I believe there were two separate quantities, would have been well in excess of the 28-gram threshold in the statute. No question about that. But the question is whether it was actually proved that he was involved in that conspiracy. And I would suggest when we look at the record here, I would agree with my brother insofar as, I don't mean to speak for him, but I think he's suggesting that the statements that my client gave, the indication from the trial record was my client had cooperated and gave pretty extensive statements to the agents. But out of all of those statements, I would suggest it was so vague, so nebulous as to what he was actually talking about, and there was much sort of back and forth on that at trial. I think the parties both recognized that. But I think that the salient thing with respect to those statements is the idea of the runner. He had used the term to the effect of him having been a runner. And so the government brought in, you could call, you could say an expert, but certainly a law enforcement, one of the agents, had asked about, you know, basically what does that mean. And I'm not suggesting in any way, shape, or form that that was not relevant. I'm not suggesting that that testimony was not admissible. The government in their brief cites at least one case standing for the proposition that that testimony, that evidence was admissible, and I completely agree. But I guess the question for the court would be whether that alone would suffice to get over the threshold of having, whether it was legally sufficient evidence. Well, you know, he was involved for about 10 weeks, as I recall, a fair amount of time, and he was in and out a fair amount of time. So he knew what they were doing. It isn't a sense that he was sort of peripheral to this. He was aware of the scope of what this was. Isn't that enough for the overall conspiracy? Well, I would say, Your Honor, I agree there was evidence he was aware of what the Dominicans were doing. But the question then would become whether there was mutuality between the parties as to this particular conspiracy. I mean, even if I'm wrong on that point, again, it goes back to what I said earlier, which is whether or not there was that mutuality vis-a-vis the conspiracy of 28 grams or more, that there were two separate very large quantities. So there was no question that there was evidence that he was aware that, you know, there was this group of men identified as the Dominicans at trial. The government had also produced a witness who, you know, lived there, and definitely she certainly knew what was going on. And on your question, Your Honor, also, there was evidence that my client had purchased there. And it was, I think he was reselling. Well, the question would be whether or not he was reselling quantities as part of a conspiracy or whether he had simply there was ample evidence that he was a user and that he had bought repeatedly from them and then was engaged in selling on his own. There's no question the government proved, you know, as to that one transaction that he was selling on his own. No question about it. I'm not here to suggest otherwise. But that still does not get the government over the hurdle in terms of whether there was that mutuality, Your Honor, as to that particular conspiracy. When you talk about mutuality, you're basically saying the issue was, was he a customer or was he a worker for the conspiracy? And if I'm properly thinking of it that way, when he himself says, I was a runner, I'm not even sure why the government needed to bring in anyone to say what runner means. It has a fair meaning. I think we depend on jurors to understand what that means. I think as a general proposition, that would be true. The problem here is the statements, it was so opaque, it was so vague. And he said, I'm a runner, but that does not establish, Your Honor, I'm sorry, I don't mean to cut you off, but that does not establish that it was vis-a-vis the conspiracy that was outlined in the indictment, which was at the Ohio Street. It was 100 and 102 Ohio Street is where those large quantities were sold. So it still doesn't. So he may have been a runner for a different conspiracy, but not this one? Absolutely. And especially on these facts. In some cases, that fact would really not matter because the inferences would be so clear that the context of runner was vis-a-vis the conspiracy as outlined in the indictment. No question about that. But that just is not the case here on these facts. It was, and I'm not faulting the government, but it was so, the facts here were so sort of disjointed. They worked with what they had. I'm sorry, what about the evidence of arrangements with them as to whether they would take away his customers or not take away his customers? Correct. That suggests that there was a working relationship between them that went far beyond this one transaction. I understand the question. I understand what you're saying. It's a very good question, but I would not categorize that as arrangements. It was at least equally consistent with him having conducted his own operation, as it were, that he was using, he was buying from them extensively and then selling on his own, on his own volition. And that being the case, that mutuality is not established. But isn't that typical of so many of these conspiracies? You have an overall suppliers and people are sub-agents of the overall suppliers, and doesn't he fit pretty well into that category? He does in the sort of general sense, but he does not in terms of when you look at the case law, as I set forth in the brief, that on this evidence, no, that it was not sufficient to tie him to that conspiracy as outlined in the indictment. Again, there's no question they established through one controlled buy, he had sold what was actually turned out to be a very small quantity of drugs. So the danger here, Your Honor, is to answer your question with a question, is that, well, but it's equally possible that you have people who are buying from very large conspiracies, this size, larger size, who are users. There's no question it was undisputed. He was a user, he was a junkie, and who are buying, and then to support their own habit, are selling on their own volition, and that's the danger here in this case. So what you're basically saying is that you can't be involved in a conspiracy if you're supplying your own habit and the sales are incidental? Well, you can't, there's not sufficient proof unless you have the proof of that neutrality where each party knows what's going on. Well, they obviously, A, they knew that he was buying more than what he needed for himself, and that he was selling it to customers, because they eventually took his customers away. Well, but there was not, it was not, if there was that other piece to that puzzle, you say they took his customers away, but that doesn't, you know, geographically they're all operating in the same place, as it were. There was nothing to indicate that they said, you know, we trusted you before, and now here you're taking customers away from us, so we're going to take them from you. There was not that sort of evidence. Well, maybe they just want to do away with the middle man. That could be, but the question would be whether there was legally sufficient proof on these facts, and again, I'm not, the government did, I think, all they could with the facts they had, but just that the facts were not there. Mr. Smith, if we were to accept everything you're saying, wouldn't we end up with, at best for you, a variance that made no difference? In other words, they proved the 28 grams. I don't think you're contesting that. Correct. They proved that there was a conspiracy, a very large one, with the Dominicans, well in excess of 28 grams. And what difference does it make how many grams there were, given the way the quantity handling was ultimately dealt with by the court? I'm sorry, Your Honor. Given the way the quantity finding was essentially put aside by the court, what difference does it then make as to whether it was the larger or the smaller conspiracy? Because my argument is not that they were required to prove the quantity. My argument is they were required to prove the conspiracy that was predicated on that quantity, because that's what the indictment was in the case. They are therefore required to prove that my client had that conspiracy, vis-à-vis that was engaged in that specific conspiracy. Thank you, Mr. Smith. Thank you very much. Good morning. Seth Afrin for the United States. The evidence was characterized as disjointed. I don't know that I'd characterize it as disjointed. I mean, the core of the case was the defendant's statement and then there was a controlled transaction that proved an example of what the defendant had been doing. The evidence from the defendant's statement is strong evidence of a conspiracy. The amount of drugs being purchased, $5,000 per week, that's not a user's amount. Sometimes he was buying $5,000 per day. He said he had four to five customers that he was supplying. He called himself a runner for the organization, and I think, Judge Cato, you're correct. That has a simple meaning that I think everyone understands, which is middleman. You're not getting to the heart of his argument. He more or less admits all of that. He says, but there was a specific conspiracy charged in the indictment. And in the Bangor area, apparently, there were a lot of conspiracies to distribute crack. And his argument is he never tied it to the specific conspiracy charged in the indictment. Okay, fair enough. He mentioned two people, Bullitt and Fish, in his statement as the people that he dealt with. Perry Proffitt, the witness, testified that at the 100 Ohio Street address, Bullitt and Fish worked there. When he did the Fuchs transaction, Bullitt is the person he talked to on the phone. Fish is the person who arrived with the drugs. So he's calling the order phone for that organization 116 times over the 10-week period. So that evidence is tying him to that house. Perry Proffitt testified he was seen at the 100 Ohio Street address. What about Judge Kayada's last question to counsel? Does it matter? Does it matter? At least you showed a variance, an immaterial variance. It doesn't matter so long as we proved it was this conspiracy with these Dominicans. The quantity does not matter. So we don't have to prove the 28 grams is in the indictment. In fact, we don't have to prove that it's cocaine or crack. You don't have to prove the... Yeah, your brother has already, he stood up and he said that's not what this case is about. Right, so we don't have to prove those things. It would only be harmful if we proved some other conspiracy entirely. But my point is the evidence shows that we did prove this conspiracy. And whether we got every detail as to quantity and drug, I think we all are agreeing doesn't matter. But we did prove that it's related to the Ohio Street drug activity at which Bullitt and Fish worked, for which the defendant was a middleman. And I think the evidence supports that conclusion. If there are no further questions, I'll rest on the brief. Thank you. That was succinct. Thanks.